IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 24-cv-01117-PAB-STV

PREMARK HEALTH SCIENCE, INC., a Texas corporation,

    Plaintiff,

v.

PLANTFUEL, INC., a Delaware corporation,
PLANTFUEL LIFE, INC., a Canadian corporation, and
BRAD PYATT, an individual,

    Defendants.

---

# ORDER

---

This matter comes before the Court on plaintiff Premark Health Science, Inc.'s Motion for Partial Summary Judgment Against Brad Pyatt [Docket No. 39]. Defendant Brad Pyatt filed a response. Docket No. 54. Premark Health Science, Inc. ("Premark") filed a reply. Docket No. 55. The Court has jurisdiction pursuant to 28 U.S.C. § 1332.

## I.  UNDISPUTED FACTS[1]

Mr. Pyatt has started at least 14 companies since 2008, most of which have never been profitable. Docket No. 39 at 5, ¶¶ 13, 16. Mr. Pyatt's companies operate in the nutrition-supplement market. *Id.*, ¶ 15. One of Mr. Pyatt's companies, MusclePharm, was the subject of an investigation by the Securities Exchange Commission ("SEC"). *Id.*, ¶ 17. As part of the investigation's resolution, Mr. Pyatt had

---

[1] The following facts are undisputed unless otherwise noted.

to disclose to companies for a set period of time that he was a "Bad Actor." *Id.*, ¶ 18.[2]

Mr. Pyatt is the founder of TRU Brands, a company that "branded, packaged and distributed" "sports nutrition and supplements." Docket No. 54 at 4, ¶ 7. TRU Brands owned the PlantFuel brand, which consists of "website trademarks, creative assets, and product formulas." *Id.*, ¶ 8. In 2020, Mr. Pyatt left TRU Brands, and Paul Norman took over as TRU Brands's CEO. *Id.* at 5, ¶ 10.

After leaving TRU Brands, Mr. Pyatt partnered with Colby Capital, a group of investors, to start a new nutrition and supplement company. *Id.*, ¶ 11. Mr. Pyatt approached Mr. Norman to discuss the purchase of the PlantFuel brand from TRU Brands. *Id.*, ¶ 13. Mr. Pyatt and Mr. Norman agreed on a purchase price of $300,000. *Id.*, ¶ 14. Colby Capital invested $310,000 to pay TRU Brand for the PlantFuel brand. *Id.*, ¶ 15. Mr. Pyatt did not use his own money to capitalize this endeavor. *Id.*, ¶ 16.

Mr. Pyatt filed the articles of incorporation[3] for PlantFuel, Inc. Docket No. 39 at 5, ¶ 12.[4] Mr. Pyatt was named President and CEO of PlantFuel, Inc., and John O'Rourke, one of three principal investors in Colby Capital, was named Secretary and Treasurer.

---

[2] In his response, Mr. Pyatt argues that "MusclePharm paid over 4 Million in attorney's fees and settled with the SEC without admitting or denying any allegations." Docket No. 54 at 11, ¶ 18. This is not responsive to Premark's assertion that Mr. Pyatt had to disclose that he was a "Bad Actor." Accordingly, the Court deems this fact admitted.

[3] Premark asserts that Mr. Pyatt filed PlantFuel Inc.'s articles of incorporation on April 15, 2020. Docket No. 39 at 5, ¶ 12. However, Premark does not dispute Mr. Pyatt's assertion that PlantFuel Inc. was formed in August 2019 in Delaware. *See* Docket No. 54 at 6, ¶ 18; Docket No. 55 at 2, ¶ 18. Although Premark does not dispute Mr. Pyatt's assertion, the August 2019 formation date is not supported by the evidence that Mr. Pyatt cites. *See* Docket No. 39-32 at 2 (listing the incorporation date as April 15, 2020); Docket No. 37-1 at 18-19, 16:21-17:1.

[4] Mr. Pyatt's response says that this assertion is "[p]artially admitted," but does not explain what portion of the assertion is admitted. *See* Docket No. 54 at 10, ¶ 12. Accordingly, the Court deems this fact admitted.

Docket No. 54 at 6, ¶ 19.  PlantFuel entered a Share Exchange Agreement with Sire Biosciences, a Canadian nutrition and supplement company, wherein Sire Biosciences acquired the PlantFuel brand.  Docket No. 54 at 6, ¶ 21.  After acquiring the PlantFuel brand, Sire Biosciences changed its name to PlantFuel Life, Inc. ("PFL").  *Id.*, ¶ 22.  PFL secured a $2 million credit to fund the inventory for its initial purchase orders, and a $3 million "equity raise" to launch the company's Brand Strategy.  Docket No. 39 at 6, ¶ 24.  PFL operated as the parent company that owned the PlantFuel brand, while PlantFuel remained as an operational corporation that paid employees and vendors in the United States.  Docket No. 54 at 7, ¶¶ 23-24.  The PFL Board of Directors resolved to hire Mr. Pyatt as its CEO.  *Id.*, ¶ 26.

Starting in May 2021, PlantFuel sent purchase orders to Premark.  Docket No. 39 at 4, ¶ 1.  Premark provided the requested products to PlantFuel, and PlantFuel accepted and did not return the products.  *Id.* at 4, ¶¶ 3-4.  Mr. Pyatt received the invoices for Premark's products.  *Id.*, ¶ 5.  Neither PlantFuel nor Mr. Pyatt paid Premark for eight of the invoices, valued at $433,881.58.  *Id.*, ¶¶ 6-7.  PlantFuel and Premark continued to do business with each other through December 2022.  *Id.* at 6, 10, ¶¶ 26, 45.  PlantFuel operated exclusively in Colorado.  *Id.* at 6, ¶ 27.[5]

On March 31, 2022, Mr. Pyatt filed paperwork with the Colorado Secretary of State to get authorization for PlantFuel to do business in Colorado.  *Id.* at 7, ¶ 28.  On July 31, 2023, the Colorado Secretary of State changed PlantFuel's status to

---

[5] Although Mr. Pyatt denies this fact, he provides no support for his denial.  *See* Docket No. 54 at 11, ¶ 27.  Therefore, the Court deems this fact admitted.

3

"delinquent" because the annual-reporting paperwork was not filed. *Id.*, ¶ 29.[6] PlantFuel never occupied a physical address and shared a mailing address with other entities of Mr. Pyatt. *Id.*, ¶ 30.[7] In addition to payments of Mr. Pyatt's salary, Mr. Pyatt and PlantFuel engaged in the following transactions:

---

[6] Mr. Pyatt denies this assertion but cites no evidence in support of his denial. Accordingly, the Court deems this fact admitted. *See* Practice Standards (Civil Cases), Judge Philip A. Brimmer § III.F.3.b.iv ("Any denial shall be accompanied by a **brief** factual explanation of the reason(s) for the denial and a **specific reference** to material in the record supporting the denial."); Fed. R. Civ. P. 56(c)(1)(A).

[7] Mr. Pyatt denies that PlantFuel never occupied a physical address, asserting that "PlantFuel entered a lease on a commercial property located at 5610 Ward Road Building, A, Arvada, CO." *See* Docket No. 54 at 11, ¶ 30. Mr. Pyatt's response does not deny that PlantFuel never occupied a physical address. *See id.* Accordingly, the Court deems this fact admitted.

4

| Direct transfers between PlantFuel Inc and Brad Pyatt | | | |
|---|---|---|---|
| Date | Amount | From | To |
| 3/30/20 | $11,557.28 | "Wire Transfer" | Brad |
| 7/7/20 | $85,000.00 | "Wire Transfer" | Brad |
| 7/8/20 | $5,326.05 | "Wire Transfer" | Brad |
| 7/14/20 | $20,000.00 | Brad | "Wire Transfer" |
| 7/20/20 | $70,000.00 | Brad | "Wire Transfer" |
| 8/7/20 | $4,974.50 | "Wire Transfer" | Brad |
| 9/4/20 | $4,974.50 | "Wire Transfer" | Brad |
| 10/2/20 | $4,974.50 | "Wire Transfer" | Brad |
| 11/2/20 | $4,974.50 | "Wire Transfer" | Brad |
| 11/24/20 | $1,562.50 | "Wire Transfer" | Brad |
| 12/3/20 | $4,974.50 | "Wire Transfer" | Brad |
| 12/10/20 | $1,562.50 | "Wire Transfer" | Brad |
| 1/11/21 | $8,072.00 | "Wire Transfer" | Brad |
| 2/12/21 | $1,000.00 | Brad | PlantFuel |
| 3/3/21 | $4,974.50 | "Wire Transfer" | Brad |
| 3/4/21 | $2,500.00 | Brad | PlantFuel |
| 3/22/21 | $4,000.00 | "Wire Transfer" | Brad |
| 4/28/21 | $10,000.00 | PlantFuel | Brad |
| 6/24/21 | $10,000.00 | PlantFuel | Brad |
| 7/26/21 | $10,000.00 | PlantFuel | Brad |
| 7/30/21 | $4,947.50 | "Wire Transfer" | Brad |
| 8/27/21 | $7,500.00 | PlantFuel | Brad |
| 10/1/21 | $10,000.00 | "Wire Transfer" | Brad |
| 10/27/21 | $100,000.00 | "Wire Transfer" | Brad |
| 2/21/22 | $18,000.00 | "Wire Transfer" | Brad |
| 3/2/22 | $4,312.34 | "Wire Transfer" | Brad |
| 3/9/22 | $16,000.00 | "Wire Transfer" | Brad |
| 3/13/22 | $7,244.94 | "Wire Transfer" | Brad |
| 5/19/22 | $14,811.93 | "Wire Transfer" | Brad |
| 9/8/22 | $265,178.55 | "Wire Transfer" | Brad |
| 9/9/22 | $250,000.00 | Brad | "Wire Transfer" |
| 9/22/22 | $9500.00 | Brad | "Wire Transfer" |

*Id*. at 7-8, ¶ 36.[8]  Mr. Pyatt occasionally put his own money into PlantFuel's bank account.  *Id.* at 9, ¶ 43.  Mr. Pyatt occasionally reimbursed himself through PlantFuel for

---

[8] Mr. Pyatt denies this information.  *See* Docket No. 54 at 12, ¶ 36.  Mr. Pyatt states that "Plaintiff's attorneys prepared these tables from bank statements voluntarily provided to them" and argues that they have "drawn false inferences with these tables." *Id.*  Mr. Pyatt contends that these transactions do not "represent that Mr. Pyatt directed payments from PlantFuel to himself" and "do not reflect 'siphoning' or commingling as plaintiff's counsel argues."  *Id.*  Mr. Pyatt's denial is not responsive to Premark's assertion that PlantLife and Mr. Pyatt engaged in the listed transactions.  Accordingly, the Court will deem these facts admitted.

5

"things like dinners." *Id.* Additionally, money flowed to PlantFuel from another company, Tasty Idea LLC ("Tasty Idea"), of which Mr. Pyatt was the sole proprietor. *Id.* at 9, ¶ 37. In 2022, Tasty Idea and PlantFuel entered into an agreement wherein Tasty Idea agreed to loan PlantFuel $1 million. *Id.* The purpose of the Tasty Idea loan was for Mr. Pyatt to "personally 'step in and help' with PlantFuel Inc's capital." *Id.*, ¶ 39 (quoting Docket No. 39-1 at 56, 54:6-8).

Mr. Pyatt resigned as CEO and CFO of PFL in April 2023. *Id.* at 7, ¶ 31. At the time that Mr. Pyatt left PFL, it "had no assets other than inventory, it was not generating cash, it did not have cash, it[s] stock was worthless, and it was not profitable." *Id.* at 10, ¶ 48. PlantFuel has no employes, operations, or known assets. *Id.*, ¶¶ 49-50. Another creditor of PlantFuel is currently suing Mr. Pyatt for $2,957,535.66 in unpaid invoices associated with PlantFuel. *Id.*, ¶ 51.

## II. LEGAL STANDARD

Summary judgment is warranted under Federal Rule of Civil Procedure 56 when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986). A disputed fact is "material" if, under the relevant substantive law, it is essential to proper disposition of the claim. *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231-32 (10th Cir. 2001). Only disputes over material facts can create a genuine issue for trial and preclude summary judgment. *Faustin v. City & Cnty. of Denver*, 423 F.3d 1192, 1198 (10th Cir. 2005). An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997). A

movant who bears the burden at trial must submit evidence to establish the essential elements of its claim. *Harper v. Mancos Sch. Dist. RE-6*, 837 F. Supp. 2d 1211, 1217 (D. Colo. 2011).

"Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works of Colo., Inc. v. City & Cnty. of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994). The nonmoving party may not rest solely on the allegations in the pleadings, but instead must designate "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quotations omitted). "To avoid summary judgment, the nonmovant must establish, at a minimum, an inference of the presence of each element essential to the case." *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001). When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. *Id*.

### III.   ANALYSIS

Premark brings claims against Mr. Pyatt for breach of contract and unjust enrichment. *See* Docket No. 1 at 7-9. The complaint asserts that Mr. Pyatt can be held directly liable. *See id.* at 7, 8, ¶¶ 24, 26, 29-31; *see also* Docket No. 36 at 7-8. The complaint alleges that Mr. Pyatt can also be held liable on an alter ego theory of liability. *See* Docket No. 1 at 4, ¶ 9.

As an initial matter, the Court considers what state law applies to Premark's claims. Premark contends that Colorado law applies to both of its claims, while Delaware law controls whether the Court should pierce the corporate veil. *See* Docket No. 39 at 11, 12, 13-14. Mr. Pyatt does not disagree. *See generally* Docket No. 54.

Federal courts apply the choice-of-law rules of the forum state in which it sits. *See Mem'l Hosp. of Laramie Cnty v. Healthcare Realty Tr. Inc.*, 509 F.3d 1225, 1229 (10th Cir. 2007). Colorado has adopted the choice-of-law approach of the Restatement (Second) of Conflict of Laws (the "Restatement"), which requires a court to apply the substantive law of the state having the "most significant relationship" to the issue. *See Wood Brothers Homes v. Walker Adjustment Bureau*, 601 P.2d 1369, 1372 (Colo. 1979). In determining which state has the most significant relationship to a contract claim, the court is guided by the factors set forth in § 188 of the Restatement. *See Nicholls v. Zurich Am. Ins. Grp.*, 244 F. Supp. 2d 1144, 1152 (D. Colo. 2003). Section 188 lists five contacts to be taken into account, including:

> [a] the place of contracting; [b] the place of negotiation; [c] the place of performance; [d] the location of subject matter of the contract; and [e] the domicile, residence, or place of business of the parties.

*Id.* (citing Restatement § 188). Here, Mr. Pyatt is a Colorado citizen, *see* Docket No. 31, PlantFuel operated in Colorado while contracting with Premark, *see* Docket No. 39 at 6, ¶ 27, and the parties have provided no evidence that the law of another state applies. Therefore, the Court will apply Colorado law to the breach of contract claim.

In determining which state has the most significant relationship to an issue in an unjust enrichment claim, the court is guided by the factors set forth in § 221 of the Restatement. *See Barnett v. Surefire Med., Inc.*, 342 F. Supp. 3d 1167, 1174 (D. Colo. 2018). Section 221 applies to "claims . . . based neither on contract nor on tort, to recover for unjust enrichment" and lists five "contacts" to be taken into account in determining the law applicable to an issue:

> (a) the place where a relationship between the parties was centered, provided that the receipt of enrichment was substantially related to the

8

> relationship, (b) the place where the benefit or enrichment was received, (c) the place where the act conferring the benefit or enrichment was done, (d) the domicil, residence, nationality, place of incorporation and place of business of the parties, and (e) the place where a physical thing, such as land or chattel, which was substantially related to the enrichment, was situated at the time of the enrichment.

*Id.* (quoting Restatement § 221). For the same reasons why Colorado law applies to the breach of contract claim, the Court will apply Colorado law to the unjust enrichment claim. *See also Galena St. Fund, L.P. v. Wells Fargo Bank, N.A.,* No. 12-cv-00587-BNB-KMT, 2013 WL 2114372, at *5 (D. Colo. May 15, 2013) (applying Colorado's choice-of-law rule and finding that New York law applies to the claims where the parties agreed that New York law applies and there was "nothing in the record to show that it would be unreasonable to apply the choice of law provisions or that they are contrary to fundamental policies of the State of Colorado").

Delaware law controls the Court's determination on whether to pierce the corporate veil given that PlantFuel was incorporated in Delaware.[9] *See* Docket No. 54 at 6, ¶ 18. "A request to pierce the corporate veil is governed by the law of the defendant company's state of incorporation." *United States ex rel. Fowler v. Evercare Hospice, Inc.,* No. 11-cv-00642-PAB-NYW, 2015 WL 5568614, at *13 (D. Colo. Sept. 21, 2015) (citing Restatement (Second) of Conflicts § 307 (1971); Charles Alan Wright et al., 7 Fed. Prac. & Proc. Civ. § 1826 (3d ed.)).

---

[9] "The terms 'alter ego theory' and 'piercing the corporate veil' are used interchangeably in Delaware law." *Winner Acceptance Corp. v. Return on Cap. Corp.*, 2008 WL 5352063, at *5 n.32 (Del. Ch. Dec. 23, 2008).

### A. Breach of Contract

Although the complaint alleges that Mr. Pyatt is directly liable for breach of contract and on an alter ego theory, Premark does not make this argument its motion for partial summary judgment. Rather, Premark asks the Court to enter summary judgment against PlantFuel, not Mr. Pyatt, on its breach of contract claim.[10] *See* Docket No. 39 at 1 (asking the Court to make "two independent rulings: (1) PlantFuel Inc is liable for breach of contract/or unjust enrichment; and (2) either Brad Pyatt is directly liable for unjust enrichment, or the Court can pierce the veil and hold Brad Pyatt personally liable for PlantFuel Inc's actions"). Even if Premark did properly move for partial summary judgment against Mr. Pyatt on its breach of contract claim, the Court finds that it is not entitled summary judgment against Mr. Pyatt on a theory of direct liability or a piercing the veil theory.

#### 1. Direct Liability

The elements of a breach of contract claim under Colorado law are: (1) the existence of a contract; (2) performance by the claimant or some justification for nonperformance; (3) failure to perform the contract by the defendant; and (4) resulting damages to the claimant. *See W. Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992). Premark argues that the "four elements" of a Colorado breach of contract claim are "satisfied for the agreements between PlantFuel Inc and Plaintiff," but does not argue that the same is true for any agreement between PlantFuel and Mr. Pyatt. *See* Docket No. 39 at 11-14.

---

[10] To the extent that Premark requests summary judgment against PlantFuel, the Court addresses Premark's request in connection to the motion for default judgment against PlantFuel. *See* Docket No. 63.

"Generally, a corporate officer acting in his or her representative capacity and within his or her actual authority is not personally liable for such representative acts unless acting on behalf of an undisclosed principal." *Kunz v. Cycles W., Inc.*, 969 P.2d 781, 784 (Colo. App. 1998). Premark does not argue that Mr. Pyatt failed to disclose he was working on behalf of PlantFuel. Furthermore, Premark does not argue, or assert facts showing, that Mr. Pyatt in his personal capacity was party to a written contract between Premark and PlantFuel. *See id.*; *see Harrison's Constr. Servs. LLC v. Eberly*, 2020 WL 14046384, at *3 (Colo. App. July 30, 2020) (holding that corporate officer could not be held "personally responsible" for corporation's actions where it was "undisputed that [corporate officer] was not a party to the written contract, as the only parties to that contract were [the corporation] and [plaintiff]"). Similarly, Premark does not argue that Mr. Pyatt's conduct, in connection to the agreement between Premark and PlantFuel, was taken in a personal capacity. *See Eberly*, 2020 WL 14046384, at *3 (holding that the "only way under the law that the trial court could find [corporate officer] personally liable for those actions or for any payments due under the contract was through a veil-piercing theory" where it was "undisputed that the actions of which [plaintiff] complains . . . were taken by [corporate officer] in his capacity as an officer and employee of [corporation], rather than in any personal capacity"). Therefore, the Court finds that Premark is not entitled to summary judgment on its breach of contract claim against Mr. Pyatt on a theory of direct liability.

### 2. Piercing the Corporate Veil

Premark also does not argue that Mr. Pyatt is liable on an alter ego theory. *See* Docket No. 39 at 11. Rather, Premark maintains that PlantFuel breached its agreement

11

with Premark. *See id.* Even if Premark did argue that Mr. Pyatt is liable for breach of contract on an alter ego theory, as discussed below, Premark fails to show that there is evidence of injustice or fraud that supports piercing the corporate veil.

### B. Unjust Enrichment

Premark argues that Mr. Pyatt is directly liable for unjust enrichment and is "also liable through PlantFuel's actions and veil piercing." *See id.* at 12. The Court will consider whether Mr. Pyatt is entitled to summary judgment under either theory.

#### 1. Direct Liability

Under Colorado law, an unjust enrichment claim requires a showing of three elements: "(1) at plaintiff's expense; (2) defendant received a benefit; (3) under circumstances that would make it unjust for defendant to retain the benefit without paying." *Dudding v. Norton Frickey & Assocs.*, 11 P.3d 441, 445 (Colo. 2000). Furthermore, under Colorado law, "a corporate officer or agent can be held personally liable for his individual tortious acts, 'even though committed on behalf of the corporation, which is also held liable.'" *List Interactive, Ltd. v. Knights of Columbus*, 303 F. Supp. 3d 1065, 1078 (D. Colo. 2018) (citations omitted); *see also Hoang v. Arbess*, 80 P.3d 863, 867 (Colo. App. 2003) ("[w]hile an officer of a corporation cannot be held personally liable for a corporation's tort solely by reason of his or her official capacity, an officer may be held personally liable for his or her individual acts of negligence even though committed on behalf of the corporation, which is also held liable."). "To be found personally liable to third persons for a tort, the officer of a corporation must have participated in the tort." *Hoang*, 80 P.3d at 868 (citations omitted). This requires a showing that the defendant "was directly involved in the conduct" at issue, either

12

"through conception or authorization." *Id*. (citation omitted). "Other direct involvement, such as active participation or cooperation, specific direction, or sanction of the conduct, also may be sufficient." *Id*. (citations omitted).

Premark fails to satisfy the second element of an unjust enrichment claim. Plaintiff contends that Mr. Pyatt received a benefit when he "obtained and warehoused the products from PreMark, and sold (for personal gain) or otherwise utilized the products as he saw fit, rather than refusing, rejecting, or returning the products." *See* Docket No. 39 at 12. However, there are no undisputed facts that establish Mr. Pyatt used or disposed of Premark's products or otherwise used the products for personal gain. *See Powers v. Emcon Assocs., Inc.*, No. 14-cv-03006-KMT, 2016 WL 1111708, at *4 (D. Colo. Mar. 22, 2016) (finding that plaintiffs "failed to set forth a viable claim of unjust enrichment against the individual Defendants" because "Plaintiffs do not set forth any allegations indicating the individual Defendants benefitted, unjustly or otherwise, in an individual capacity from Plaintiff[s'] . . . work and/or employment") (applying Colorado law). Rather, it is undisputed that "PlantFuel Inc accepted the products and did not return the products." *See* Docket No. 39 at 4, ¶ 4.

Because Premark fails to establish an essential element of its unjust enrichment claim on a theory of direct liability, the Court will deny summary judgment for Premark.

### 2. Piercing the Corporate Veil

To state a veil-piercing claim under Delaware law, "the plaintiff must plead facts supporting an inference that the corporation, through its alter-ego, has created a sham entity designed to defraud investors and creditors." *Crosse v. BCBSD, Inc.*, 836 A.2d 492, 497 (Del. 2003). Under Delaware law, "[v]eil piercing is a tough thing to plead and

13

a tougher thing to get, and for good reason." *PXP Producing Co. LLC v. MitEnergy Upstream LLC*, 342 A.3d 402, 416 (Del. Ch. 2025) (citation omitted). "Delaware public policy does not lightly disregard the separate corporate form." *Id.* (internal quotations and citation omitted). Courts in Delaware disregard the corporate form only in exceptional cases. *Id.* at 416-17.

There are two elements to a veil-piercing claim. *Mason v. Network of Wilmington, Inc.*, 2005 WL 1653954, at *2-3 (Del. Ch. July 1, 2005). For the first element, a plaintiff must show that the defendant was an alter ego of the corporation. *Id.* Whether the defendant is an alter ego of the corporation turns on an inquiry that considers factors such as "(1) whether the company was adequately capitalized for the undertaking; (2) whether the company was solvent; (3) whether corporate formalities were observed; (4) whether the dominant shareholder siphoned company funds; and (5) whether, in general, the company simply functioned as a facade for the dominant shareholder." *PXP Producing Co.*, 342 A.3d at 417*; see also Winner Acceptance Corp. v. Return on Cap. Corp.*, 2008 WL 5352063, at *5 (Del. Ch. Dec. 23, 2008). No one factor is dispositive in this analysis. *PXP Producing Co.*, 342 A.3d at 417; *Mason*, 2005 WL 1653954, at *3.

For the second element, a plaintiff must show some aspect of fraud, injustice, or unfairness. *PXP Producing Co.*, 342 A.3d at 417; *Mason*, 2005 WL 1653954, at *3. The Court finds that Premark fails to satisfy the second element of the alter ego analysis. Premark argues that overall justice and fairness weighs in favor of piercing the corporate veil because "Brad Pyatt is a serial fraudster with at least 14 entities to his name, one of which he is already deemed a 'Bad Actor' for by the SEC." *See* Docket

14

No. 39 at 18-19. Premark claims that Mr. Pyatt is "doing it again through PlantFuel Inc." and notes that Mr. Pyatt is named in a separate suit by another creditor. *See id.* at 19. The fact that Mr. Pyatt has had at least 14 unprofitable companies and was designated a "Bad Actor" as part of the SEC investigation does not demonstrate that Mr. Pyatt used PlantFuel to "defeat the ends of justice, to [perpetrate] fraud, to accomplish a crime, or otherwise evade the law" in this case. *See In re Opus E.*, 528 B.R. 30, 65 (Bankr. D. Del. 2015). Mr. Pyatt's alleged history of fraud, unrelated to the dealings between Premark and PlantFuel, is not sufficient to establish that Mr. Pyatt used PlantFuel's corporate form to perpetrate fraud against Premark. *See Kertesz v. Korn*, 698 F.3d 89, 91 (2d Cir. 2012) (an "alter-ego claim thus turns on the facts of the owner's operation of the corporation and its relationship to the alleged victim") (applying Delaware law).

Premark asserts that PlantFuel and Mr. Pyatt engaged in financial transactions that were unrelated to Mr. Pyatt's salary, *see* Docket No. 39 at 17, but provides no evidence that Mr. Pyatt was using the funds for an improper purpose and was thus siphoning funds. *See Bristow First Assembly of God v. BP p.l.c.,* 660 F. Supp. 3d 1115, 1127 (N.D. Okla. 2023) (granting summary judgment for defendant on an alter ego theory where plaintiff provided "no evidentiary citation in support of the assertion that the $93 million transfer was made in violation of Delaware's dissolution procedures" and thus constituted siphoning). Premark's assertion that "Brad Pyatt used PlantFuel Inc to accept compensation from sales of goods while avoiding paying creditors for providing those goods" and that, "[b]y having PlantFuel Inc between himself and PreMark, Brad Pyatt thought that he would be able to pay himself gross revenues without having to pay for the cost of the products" lacks support from the undisputed facts. *See* Docket No.

15

39 at 18.  Premark's underlying claim for breach of contract is, "on its own, insufficient to establish the requisite injustice."  See *Medtronic*, 2013 WL 5323307, at *10; *EBG Holdings LLC v. Vredezicht's Gravenhage 109 B.V.*, 2008 WL 4057745, at *12 (Del. Ch. Sept. 2, 2008) ("although [defendants'] alleged breach of contract may be unjust or wrongful, the requisite element of fraud under the alter ego theory must come from an inequitable use of the corporate form itself as a sham, and not from the underlying claim").

Even if Premark established that Mr. Pyatt exercised exclusive domination and control over PlantFuel, Premark's failure to establish evidence of injustice or fraud means that its claim cannot be supported on a theory of alter ego liability.  *Opus*, 528 B.R. at 64-65 ("Merely presenting evidence of dominion or control of the parent over the subsidiary, without evidence of fraud or similar injustice, will not support alter ego liability.") (citation omitted).  Accordingly, the Court will deny summary judgment for Premark on its unjust enrichment claim.

## IV. CONCLUSION

Therefore, it is

**ORDERED** that Premark Health Science, Inc.'s Motion for Partial Summary Judgment Against Brad Pyatt [Docket No. 39] is **DENIED**.

DATED March 10, 2026.

                BY THE COURT:

                s/ Philip A. Brimmer
                PHILIP A. BRIMMER
                United States District Judge